IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| SHANE CAIN #537264 | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv369 |
| JENNIFER N. SANDERS, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRTE JUDGE

Plaintiff Shane Cain filed a *pro se* complaint under 28 U.S.C. § 1983 complaining of alleged violations of his constitutional rights as a prisoner in the Texas Department of Criminal Justice (TDCJ). The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Before the Court is the motion by the Defendants, Jennifer Sanders, Michael Collum, and Lonnie Townsend, seeking summary judgment on Plaintiff's claims. (Dkt. #54.) Plaintiff responded in opposition to the motion, Defendants filed a reply in support of it, and Plaintiff filed a sur-reply. (Dkt. ##55–57.) For the reasons explained below, the undersigned recommends that the motion be granted and that summary judgment be entered in favor of Defendants.

**I. Plaintiff's Allegations**

Plaintiff's allegations and their context are set forth in his complaint (Dkt. #1), his more definite statement (Dkt. #10), and the TDCJ's *Martinez* report, which was filed at the Court's request. (Dkt. #18.) Plaintiff has high blood pressure for which he takes medication. (Dkt. #1 at 4–5.) On April 8, 2021, he saw the doctor and obtained a renewal of his blood pressure medication. (Dkt. #10 at 1.) A "'heat sensitivity' notice was sent to Defendant Sanders, unit classification, to inform her that [he] was on a heat sensitive medication." (*Id.*) Plaintiff's medical records,

submitted by TDCJ, confirm that he was noted to have a "heat restriction" due to medications by February 22, 2021, at the latest. (Dkt. #18-3 at 91.)

Plaintiff alleges that for the five years, until April 13, 2021, he was housed in dorm 18 of the TDCJ's Michael Unit, which is the Unit's least restrictive housing area, as a G2 custody general population inmate with full privileges. (Dkt. #1 at 4–5.) On that date, he was told he was being moved to building 12—the most restrictive housing area in the Michael Unit—and shown a form signed by Defendant Sanders authorizing the move. (Dkt. #1 at 5; Dkt. #10 at 1.) Officer Neal, whom Plaintiff was helping pass out property when he was informed of the move, sought out Defendant Sanders to inquire about the reasons and found Sanders with Warden Townsend and Assistant Warden Collum. (Dkt. #10 at 1–2.) Sanders told Neal the move was due to Plaintiff's medication, and Collum told her to find another inmate to help with her work because Plaintiff was going to be "treated like a seg. inmate." (*Id.* at 2.)

As he was on his way to his dorm to pack for the move, Plaintiff encountered Defendants Townsend, Collum, and Sanders and asked Defendant Townsend why he was being moved. (Dkt. #10 at 2.) Townsend answered "because of the Pack 1 lawsuit[1] and your blood pressure medication." (*Id.*) Plaintiff then asked whether he would be treated as a general population inmate or a restrictive housing inmate, and Defendant Collum told him that he "would be 'treated like an

---

[1] The Court takes judicial notice that this is a reference to previous litigation in the United States District Court for the Southern District of Texas, in which prisoners at the Pack Unit and TDCJ officials ultimately agreed to resolve heat exposure claims with TDCJ's agreement "to install air conditioning in the housing units where the class members resided and to maintain indoor heat indices at or below 88 degrees Fahrenheit between April 15 and October 15 each year." *Hardwick v. Bowman*, No. 6:21CV201, 2023 WL 4056050, at *8 (E.D. Tex. Apr. 26, 2023) (discussing *Sain v. Collier*, No. CV H-18-4412, 2019 WL 4144321, at *5 (S.D. Tex. Aug. 30, 2019), *report and recommendation adopted*, No. 6:21-CV-00201, 2023 WL 4054687 (E.D. Tex. June 16, 2023). In the context of that litigation, TDCJ promulgated a "Three-Year Plan," which included "a new process to place certain offenders who may be at an increased risk of developing a heat-stress illness in air-conditioned housing by assigning 'every offender in the TDCJ system ... a Heat Sensitivity Score based on their medical conditions and prescribed medications.'" *Sain v. Collier*, 2019 WL 4144321, at *16.

ad. seg inmate.'" (*Id.*) Plaintiff asked how long he would be treated that way and commented that he was being punished for being on medication, and Townsend told him that if he did not like it, he could go to the doctor and get off his medication and be returned to the dorm. (*Id.*) Plaintiff says that from all of these statements by Defendants, in combination, "it was clear that I was being told I was being punished for exercising my right to take my high blood pressure medication." (*Id.* at 5.) He states that he later started refusing his medication and sent several medical requests to take him off his medication so he could return to normal housing, but the doctor would not take him off the medication. (Dkt. #10 at 3.)

For the next five months, Plaintiff was locked in his cell 24 hours a day and treated like the inmates on administrative segregation and security detention with whom he was housed. (*Id.*) Heightened restrictions to which he was subjected included the inability to visit the dayroom, library or craft shop, watch television, use the telephone to call friends or family, attend church, school, work or recreation in the gym or outside. (*Id.*) Plaintiff had to be handcuffed to leave his cell to go to the shower or medical. (*Id.*) He characterizes this as retaliation, discrimination, and punishment for exercising his right to treatment for his medical condition in violation of the First, Fifth, Eighth, Tenth, and Fourteenth Amendments to the U.S. Constitution. (Dkt. #1 at 6.)

In a response dated June 21, 2021, to Plaintiff's grievance about his move, Assistant Warden Michael Collum responded: "You are appropriately assigned to a cool bed housing area due to your Heat Sensitivity Score. No policy violation noted." (Dkt. #1-1 at 4.) On August 3, 2021, a TDCJ official explained the following in response to Plaintiff's appeal:

> Your complaint has been reviewed by this office. Your placement in the restrictive housing area is due to your requirement of a "cool bed" and the main building is unable to provide that for you. The State Classification Committee (SCC) assigns inmates to facilities based on many criteria with the safety and security of the facilities being of the utmost importance. Medical restrictions are another circumstance reviewed by the SCC. Your housing location is appropriate and in

>compliance with all current restrictions, specifically heat and the need for air conditioning. No further action warranted.

(Dkt. #1-1 at 2.) Plaintiff states that he never had any communication with any health care provider about whether his health condition would benefit from air conditioning and that he does not know whether an air conditioning requirement is appropriate for him. (Dkt. #10 at 7.)

Plaintiff was transferred to the Pack Unit on September 22, 2021, where all of his privileges were restored. (Dkt. #10 at 5.) He sues Jennifer N. Sanders, the chief of unit classification at Michael Unit; Michael Unit Assistant Warden Michael A. Collum; and Michael Unit Warden Lonnie Townsend. (Dkt. #1 at 3.) He accuses them each of discrimination[2] and punishing him in retaliation for exercising his rights. (*Id.*) In addition to declaratory and injunctive relief, he seeks nominal damages of $1 plus punitive damages of $30,000 from each Defendant. (*Id.* at 4.)

## II. The Defendants' Motion and Further Briefing

Defendants assert that, as part of TDCJ's efforts to reduce the risk of heat-related illness among its inmates, it assigns every inmate a heat sensitivity score based on their medical conditions and medications and places the inmates at highest risk from heat in air-conditioned housing. (Dkt. #54 at 1.) They say the State Classification Committee reviewed Plaintiff's medical restrictions in March 2021 and determined that his heat sensitivity score of P01 required his reassignment to a temperature-controlled area. (*Id.* at 6.) In support of these facts, Defendants rely on the affidavit of Amanda Flinn, a TDCJ manager of classification and records, who testified in pertinent part as follows based on her review of the relevant records:

> In March of 2021, the State Classification Committee conducted an evaluation and determined that Mr. Cain had to be moved within the facility due to his heat sensitivity score. Individuals incarcerated with the TDCJ are assessed for medical

---

[2] In his more definite statement, in response to the question "On what basis do you claim the Defendants are 'discriminating' against you?" Plaintiff stated that Defendant Sanders would not allow him to attend educational classes because of his age and high blood pressure medication but that he affirmatively waived that claim. (Dkt. #10 at 6.)

4

> and mental impairments by qualified health care providers who assign inmates appropriate restrictions related to housing, physical activities, transportation, and work.
>
> Due to Mr. Cain's medical conditions, he has been assigned a heat score of P01, which requires him to live in temperature-controlled housing. On April 13, 2021, Mr. Cain was moved to 12 Building of the Michael Unit, because it was the only available housing location on the facility with air conditioning. This was considered temporary transient custody overflow housing until a permanent housing assignment could be made. The Michael Unit 12 building does have more restrictions and, at the time, there were additional movement restrictions due to the COVID-19 pandemic. This housing assignment was not considered permanent but was made only until there was available space in another temperature-controlled location.
>
> On September 22, 2021, Mr. Cain was moved to the Pack Unit in Navasota, Texas, which is a fully airconditioned unit. Mr. Cain remains at a G2 custody level and lives in the general population at the Pack Unit. He is entitled to all the privileges as any other G2 inmate. . . . His current housing assignment is designated to accommodate his medical needs.

(Dkt. #54-1 at 2–3.) Plaintiff's Unit Classification Review History, already in the Court's record as an attachment to the *Martinez* report filed previously by the TDCJ, indicates that Plaintiff's housing status as of April 13, 2021, was "transient custody overfl[ow] . . . due to HSS." (Dkt. #18-2 at 27.)

Also in the Court's record is an authenticated copy of TDCJ Administrative Directive AD-10.64, dated May 8, 2020, which concerns "Excessive and Extreme Temperature Conditions in the TDCJ" and provides in pertinent part as follows:

> Every reasonable effort shall be made to prevent injuries related to excessive or extreme temperatures in the TDCJ. . . .
>
> The TDCJ shall work closely with health care staff to immediately identify offenders at risk from excessive or extreme temperatures. . . .
>
> Offenders incarcerated within the TDCJ shall be assessed for medical and mental impairments by qualified health care staff who will assign each offender appropriate restrictions related to physical activities, transportation, and work. Appropriate limitations and restrictions shall be assigned and entered in the Restrictions Module in the electronic health record (HER). The latter is automatically transmitted to the TDCJ mainframe HSIN screen.
>
> Once an offender is identified as at-risk, health care staff shall notify unit countroom staff and update the offender's HSIN accordingly. Countroom staff shall

5

> then make any necessary changes to the offender's housing or work assignment and notify correctional staff if an adjustment is necessary.
>
> . . .
>
> Offenders with Heat Sensitivity Scores
>
> The agency recognizes that some offenders are potentially at a heightened risk of heat-related illnesses because of their age, health conditions, or medications. These offenders are identified through an automated heat sensitivity score that uses information from the offender's HER. Heat sensitivity scores are updated daily with changes to the HER/ . . . Offenders who have a heat sensitivity score receive priority placement in a housing area that is air-conditioned. . . .

(Dkt. #18-5 at 1, 6, 8–9.)

Defendants assert that Plaintiff's claims for declaratory and injunctive relief have been mooted by his transfer to the Pack Unit (Dkt. #54 at 4–7) and that they are entitled to qualified immunity because Plaintiff's five-month placement in restrictive housing did not violate any clearly established rights. (*Id.* at 7–11.)

In his response to Defendants' motion, Plaintiff contests the suggestion that building 12 was the only building in the Michael Unit to which he could have been moved to be housed in an air-conditioned environment. (Dkt. #55.) In a statement made under penalty of perjury, he says that "there are two (2) airconditioned housing areas at the Michael Unit," (Dkt. #55-1 at 1), and in his response he explains that the other is building 10, which is not designated as restrictive housing like building 12 is. (Dkt. #55 at 1.) Building 10 inmates enjoy privileges like not being handcuffed, leaving their cells, using the phone, and watching TV. (*Id.*) He also disputes that his April 2021 move was in response to any change in his heat sensitivity, as he had been assigned a heat sensitivity score of P01 since August 20, 2018. (*Id.*) He asserts that Defendants indicated he was being moved because "was being punished as a result of the Pack 1 aircondition lawsuit and for being on blood pressure medication." (*Id.* at 2.) He attaches to his response a TDCJ Unit Classification Review history, which includes a designation of "HEAT SENSITIVE OFFENDER—HEAT SCORE = P01" dated August 20, 2018. (Dkt. #55-2.)

6

In reply, Defendants do not dispute that Plaintiff had a P01 heat score as of August 20, 2018. (Dkt. #56.) They simply state that the State Classification Committee conducted its evaluation of his medical restrictions in March 2021 and assigned him to air-conditioned housing on April 12. (*Id.*) And they maintain that building 10 of the Michael Unit was not "available" to Plaintiff because it houses inmates on hospice, to which Plaintiff as a level 2 general population inmate "was not entitled." (*Id.* at 2.) They rely on the affidavit of Defendant Jennifer Sanders, the TDCJ chief of classification and records, who testifies that "the 10 Building provides air-conditioned housing, but only to inmates eligible for hospice due to a terminal illness or for inmates awaiting transport to a medical facility due to a serious or grave medical condition." (Dkt. #56-1 at 2.) She further states that "[g]eneral population inmates, even those with heat restrictions or heat scores, are not housed in 10 Building" and that "Mr. Cain is a general population inmate and would not have been entitled to housing in 10 Building." (*Id.*)

Plaintiff responds to this new information in his sur-reply with the observation that TDCJ's Restrictive Housing Plan of 2018 prohibits the housing of G2 inmates in "12 building/Restrictive Housing" and asks a question: "According to the defendants, <u>neither</u> of those [two air conditioned] buildings can house G2 general population inmates. . . . so why was the plaintiff <u>really</u> being housed and punished in 12 building/Restrictive Housing?" (Dkt. #57 at 1–2.) He says the answer should be determined by a jury and offers his own explanation:

> The Michael Unit houses a lot of inmates that have Heat Scores that require they be oused in aircondition [sic], however, that unit administration refuses to designate any aircondition area for G2 custody General Population to house these inmates. Instead of designating airconditioned places for G2 custody general population inmates to live they, these defendants, house these inmates (like the plaintiff) in 12 building/Restrictive Housing to miss-house them and punish them to pursuade [sic] them to getting off their medications or refusing their Heat Score so they don't have to create G2 custody housing areas for them.

(*Id.* at 2.)

7

### III. Legal Standards

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.

*EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

**IV. Discussion and Analysis**

    A. Declaratory and Injunctive Relief

In addition to monetary damages, Plaintiff seeks "decla[ra]tory relief to declare these acts unconstitutional" and "injunctive relief to stop this punishment." (Dkt. #1 at 4.) Defendants assert that Plaintiff's transfer to another prison unit has rendered those claims moot, and Fifth Circuit precedent supports that position:

> "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). "To obtain [declaratory] relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the

9

future." *Id.*

*Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) (dismissing claim for declaratory judgment and allowing excessive-force claim to proceed). Plaintiff cannot and does not attempt to establish that there is any real likelihood of his being moved back to building 12 of the Michael Unit. Accordingly, his transfer out of the Michael Unit where he alleges he was improperly housed mooted his claims for declaratory and injunctive relief. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) ("Herman's transfer from [one prison to another] rendered his claims for declaratory and injunctive relief moot."). Those claims should be dismissed.

    B. Retaliation and Discrimination

Officials may not retaliate against an inmate for exercising his constitutionally protected rights. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). Inmates can state a claim for retaliation in violation of the First Amendment by alleging "that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

Although this is less clear in other jurisdictions,[3] the Fifth Circuit has expressly held that the first element of a retaliation claim is satisfied by a prisoner's "claim of a right to adequate medical treatment." *Ward v. Fisher*, 616 F. App'x 680, 684 (5th Cir. 2015). But causation in a retaliation case requires a showing that "but for the retaliatory motive the complained of incident

---

[3] *See, e.g.*, *James v. Gage*, No. 15-CV-106 (KMK), 2019 WL 6251364, at *6 (S.D.N.Y. Nov. 21, 2019) (granting qualified immunity to defendant on retaliation claim because "a prisoner's right to seek or demand medical attention has not been clearly established by either the Supreme Court or the Second Circuit"); *Becker v. Crow*, No. 1:13-CV-117, 2014 WL 3936386, at *7 (D.N.D. Aug. 11, 2014) (comparing cases and allowing claim to proceed beyond initial screening despite being "less clear").

. . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (internal citations omitted). "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Id.* (internal quotation marks omitted). "The inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal quotation marks omitted). "Conclusory allegations of retaliation without a specific factual basis will not suffice." *Graves v. Mbugua*, No. 9:16-CV-170, 2020 WL 6947900, at *5 (E.D. Tex. Aug. 13, 2020), *report and recommendation adopted*, No. 9:16-CV-170, 2020 WL 6940783 (E.D. Tex. Nov. 24, 2020) (citing *Woods*, 60 F.3d at 1166). And trial courts are to carefully scrutinize claims of retaliation "[t]o assure that prisoners do not inappropriately insulate themselves . . . by drawing the shield of retaliation around them." *Woods*, 60 F.3d at 1166.

Defendants are correct that the uncontested facts of this case do not establish retaliation. Plaintiff acknowledges and the records in evidence confirm that his heat sensitivity score based on his medical condition and medications warrants placement in an air-conditioned housing area pursuant to TDCJ policy. There is thus a documented, objective reason for Plaintiff's move wholly apart from any retaliation. Plaintiff suggests that it is strange that he was suddenly moved "just five (5) days" after having his medication prescriptions renewed at an appointment "for high blood pres[s]ure and other heart problems" (Dkt. #57 at 1), even though he had a heat sensitivity score since 2018, and the Court agrees that Defendants have not explained the exact timing of the State Classification Committee's evaluation that led to his move. It might have been prompted by some new data entry following Plaintiff's most recent appointment, or it might have been an overdue action based on his heat score assessment from years earlier. But either way, there is no chronology here to suggest that it was motivated by any desire to retaliate against Plaintiff for acquiring

11

medical care. He had plainly been doing so for years without repercussion, and he does not allege any facts that would make this particular appointment or this renewal of previously prescribed medications the trigger for anyone to want to retaliate against him.

Plaintiff insinuates that Defendants' reference to the Pack litigation (see fn.1 above), his age, and his medical needs as the reasons for his move somehow amount to an acknowledgement of retaliation. But those are simply all considerations in the TDCJ's efforts to mitigate the risk of heat-related injury to Plaintiff and similarly situated inmates. None of the Defendants told Plaintiff that he was being punished; they simply told him why he was being moved. Plaintiff thus fails to establish retaliation as a causation for his move.

Plaintiff was moved into an air-conditioned building.[4] The only aspect of the move that could arguably be deemed adverse to Plaintiff was the more restrictive environment to which he was moved. And again, the Court agrees with Plaintiff that Defendants have not successfully explained why—when faced with the choice between two air-conditioned buildings for which Plaintiff was not otherwise suited—they placed him in the more restrictive of the two. But this case does not require the Court to decide whether permanent placement of a certain class of medically-needy inmates in the equivalent of punitive segregation might violate their constitutional rights. In this case, the records make clear that Plaintiff's assignment to building 12 was always considered temporary and that it ultimately was a short-term placement. Plaintiff was moved to the Pack Unit on September 22, 2021, little over five months after he was moved to building 12. While conditions in building 12 may have been less than ideal, that does not make his placement there retaliatory any more than confining a patient to a hospital bed is retaliation for his

---

[4] In his response, Plaintiff alleges that months after his move to building 12, he was moved to another cell within building 12 that had a blocked air duct and suggests this may have been in retaliation for his filing a grievance. (Dkt. #55-1.) That claim was not asserted in the complaint, and Plaintiff has not moved to amend the complaint to include it.

12

illness. And the conditions described by Plaintiff were not so severe that enduring them for five months independently violated his constitutional rights. *See Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014); *Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005).

There is no genuine issue of material fact in this record from which a jury could find that Plaintiff's temporary reassignment to building 12 was motivated by a desire to retaliate against him for any constitutionally protected activity. Defendants are entitled to summary judgment on that claim.

Similarly, no trier of fact could find based on this record that Defendants improperly discriminated against Plaintiff by moving him to an air-conditioned housing area, even assuming that such a claim remains in this action. (*See* fn.2 above.) The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. It is in essence "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Accordingly, the threshold element of a typical equal protection claim is "that two or more classifications of similarly situated persons were treated differently." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012). "A prisoner's vague and conclusory allegations that his equal protection rights have been violated are insufficient to raise an equal protection claim." *Propes v. Mays*, 169 F. App'x 183, 185 (5th Cir. 2006).

To state discrimination claim under the Fourteenth Amendment, a plaintiff must typically allege that a government actor "intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). Alternatively, a plaintiff may state a "class of one" equal-protection claim by alleging that he

personally "has been irrationally singled out" for unfavorable treatment. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff here does not claim to be a member of any recognized protected class. *See Sonnier v. Quarterman*, 476 F.3d 349, 368 (5th Cir. 2007) ("Examples of suspect classes are those based upon race, ancestry, or religion."); *Doe v. Univ. of N. Texas Health Sci. Ctr.*, No. 4:21-CV-00658-O, 2023 WL 4166458, at *5 (N.D. Tex. June 23, 2023) (observing that "the Supreme Court has held that the disabled . . . are not a protected suspect class for purposes of equal protection analysis"). And he does not claim that he has been treated worse than "similarly situated" Michael Unit inmates with his combination of age and medical conditions. Nor can he possibly prove that it is irrational to house medically vulnerable inmates in air-conditioned environments when medical advice, department policy, and common sense all support such a move. Plaintiff's unsupported claim of "discrimination," therefore, is not enough to survive summary judgment. *See Reagan v. Burns*, No. 3:16-CV-2590-G-BH, 2019 WL 6733023, at *12 (N.D. Tex. Oct. 30, 2019), *report and recommendation adopted*, No. 3:16-CV-2590-G (BH), 2019 WL 6729085 (N.D. Tex. Dec. 10, 2019) ("The Fifth Circuit has held that bare and conclusory assertions are insufficient to support a 'class of one' equal protection claim, particularly where these assertions offer no basis upon which to determine that persons similarly situated to the plaintiff were treated differently without rational basis.") (citing *Bell v. Woods*, 382 F. App'x 391, 393 (5th Cir. 2010)). Defendants are entitled to summary judgment on this claim.

## RECOMMENDATION

For the reasons explained above, the undersigned recommends that Defendant's motion for summary judgment (Dkt. #54) be **GRANTED.** Judgment should enter for Defendants, and Plaintiff's claims should be **DISMISSED** with prejudice on their merits.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 4th day of August, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE